May it please the Court, Counsel. My name is Mike Badesky, and I'm representing State Farm in this case. Excuse me. Your Honor, this is a case of insurance policy interpretation decided on cross motions for summary judgment. There's no issue of material fact. We're not claiming that there was some kind of material fact issue as a basis of reversal. Our argument is that the trial judge just got the policy analysis incorrect. The trial judge just erred in his analysis of the policy. This is de novo review, so there's no discretion given to the trial judge. This Court can review the matter with fresh eyes and do its own independent analysis. The only issue here, Your Honors, is whether or not the 2015 Chrysler Michael Osborne rented from Hertz is a temporary substitute car, as that term is defined for underinsured motorist coverage under the State Farm policy. And the policy says, the policy terms, and they're found at the record at C-25, a temporary substitute car means a car that is in the lawful possession of the person operating it and that it must replace your car while your car is out of use due to its breakdown, repair, servicing, damage, or theft. The point of this provision in the policy is that the insurance here insured one vehicle. They purchased insurance to cover a 2004 Chevy Suburban. As we know in Illinois, insurance follows the vehicle and not the insurer, so only one vehicle is insured at a time. That's the purpose of this particular provision. In other words, it's not designed, the temporary substitute car is not designed to expand coverage. It only covers another vehicle while the original covered vehicle in the deck sheet is out of service, it's being repaired, maybe it's stolen, or it's being, it's broken down. So in other words, the insurance has to temporarily use another vehicle. The problem that happened in this case, Judge, is that the trial court never determined whether that 2004 Chevy Suburban, the insured vehicle on the policy, was actually out of use. Why was it out of use? They didn't use it, but was it broken down is the question, isn't it? Is that what you're trying to argue? No, what I'm arguing is that it was never out of use. In other words, to trigger. They were using the rental car, weren't they? They were using both, Judge. Both Suburban and his own car? Yes, the wife, Mrs. Osborne, Anna Osborne, she was using that car. In fact, she used it the very day before the accident. It was never out of use, it was never broken down, it was never scheduled for repairs. Does it have to be broken down, or just out of use? It has to be out of use to begin with. So you're saying then, maybe you should give your keys to somebody else and say, I can't use it now because I'm going on a trip to Florida. No, absolutely not. That's out of convenience. The car is not used? I'm sorry? They don't use it, they don't have the keys. If the car, the reason, the coverage only applies if, number one, the car is not being used. Okay, she was using the car. The reason why she didn't use it the day of the accident is because the accident happened in the morning, she got a call, and that's the accident that already happened. And the day before the accident, she's driving around Franklin County delivering subpoenas as part of her work. She worked as a process server. The same day, Mr. Osborne is heading down Interstate 57 to Florida. Both vehicles are being used at the same time. That's not what this coverage is about. This is a temporary substitute coverage when the insured vehicle, the 2004 Chevy Suburban, is out of use. In other words, you don't extend coverage because, well, we're going to take another car down to Florida. Meanwhile, we're still going to use our other car here in Franklin County. That's not what this coverage is about. It has to be out of use, and the reason for it to be out of use is either breakdown, repair, servicing, damage, or theft. In other words, it has to fit into those categories. And I cited some out-of-state cases that talked about how it's not a matter of convenience. There was that California case where the guy didn't want to bring his truck into town because he was throwing dirt around, so he used a friend's vehicle. That's not going to work. The court said, no, it's not about convenience because he's still using his car to get to the job site, to his home. There was another case I cited out of Georgia where this lady didn't want to use her own vehicle because the heater didn't work well, so she used her mother's car even though her vehicle was operating fine. The court said, no, the mother's car is not a temporary substitute because just because the heater doesn't work, the vehicle is still being used. So, again, it's not a matter of convenience. The problem with this case is the Osbournes decided it was a matter of convenience. They didn't want to use the 2004 Chevy Suburban to drive down to Florida because, like Mr. Osbourne said, while this car's got between 130,000 and 150,000 miles on it, potentially something could break. He could be somewhere in the middle of Florida, what have you. It needs a repair. It needs a water pump. It needs a fuel pump, something. But that's not what this coverage is designed for. What happened in this – Just for my general education, is this peculiar to this court pushing to state-borne policies or other – Oh, no, there's policies nationwide through a number of different carriers. And I've cited a number of cases in my brief, and they're not all State Farm. Most of them are other carriers for a number of years, actually. It's not unusual at all. Because, again, the point of the coverage is the insurance company is only going to insure one vehicle. It's not going to insure two vehicles. Well, I thought she insured the person driving the vehicle. That's what got me. You insure the vehicle. You insure the vehicle. Because that's what – if you lend your vehicle to – How can you have PI if you don't insure the person? When the other guy pays, you don't have to pay for the other guy's insurance. You're insuring the guy that owns the vehicle, right? Not the vehicle. The vehicle doesn't pay anything. That's what I don't understand. You always say that it's the vehicle that's got coverage. But no, the person that owns the vehicle has coverage. Well, the person that owns the vehicle buys the coverage. But, for example – He's not covered. Or is he covered? I think he is covered. Right? The deck action was against these passengers, Judge. It's not against Mr. Osborne. I don't care. I'm just talking insurance. Oh, yeah. Mr. Osborne is an insured person. He's a named insured on the policy. He keeps saying insured vehicle, and you went through it. I thought it was an insured person. Well, it's based on the vehicle. The coverage follows the vehicle in Illinois, not the person. So, there's Mr. Osborne that owns this vehicle. It follows the vehicle, but it insures the person. It depends on which coverage you're talking about, Judge. I mean, it's hard to tell. Liability is the other way. Liability would be if someone's using the vehicle with Mr. Osborne's permission, his insured vehicle, the Chevy Suburban, then that person would have liability coverage because Mr. Osborne let the person use it. The only time you don't have liability coverage is if a thief has the car. That's basically the way the cases go for liability coverage. But, again, Mr. Osborne will let a friend use the car. That's kind of how that works. All I'm trying to get at is if he drives somebody else's car, he's not covered? He's covered by that other car's insurance for the liability. That car doesn't have any insurance on it. Then he would have uninsured motorist coverage on his own policy if he's driving another vehicle. It depends on the coverage that's provided. But if Mr. Osborne is driving another vehicle, yeah, he's insured on the policy, so he would have coverage on the policy. But there's no policy on the other vehicle. That's my question. Well, there would be uninsured motorist coverage potentially available to him on his own vehicle. From this? Okay. Yeah. So what happened, Judge, the trial court basically, and the analysis starts at Citation 430, C430 in the record, anyway, the trial judge basically looked at these different categories, you know, breakdown, repair, servicing. He tried to decide whether or not the Chevy Suburban met the categories of these different terms. Was it broken down? Was it repaired? Was it being serviced? And he decided, well, it's damaged. Oh, you know, the rear air conditioner doesn't work in the Suburban, so it's damaged. So then he kind of said, well, since it's damaged, it has to be out of use. Okay, that's sort of the opposite analysis, the way this is supposed to work under the policy. First, the vehicle has to be out of use. Then it has to fit within one of these enumerated categories, either breakdown, repair, servicing, damage, or theft, to be entitled to the temporary substitute coverage for the UIM coverage. So what the trial court did was kind of get the matter sort of reversed. And again, like I was saying earlier, Judge, there's undisputed facts here. The 2004 Suburban was absolutely in use during this time. Anna Osborne, who got the depositions in the record, she drove the vehicle for her work. It was drivable. It was not broken down. It was not in a repair shop. It was not scheduled for repairs. She was even asked whether it had problems with the steering or the transmission. Did it shake if you drove it too fast? No. She was using the car as she had always used it. She was using the vehicle. It was in use. That is absolutely undisputed. It would be hard to argue that it was out of use. I mean, this woman used the vehicle just as she would always use it. But they didn't, the Osbornes did not want to drive this car on this long trip down to Florida. That's why Mr. Osborne rented this Chrysler from Hertz, because he wanted a more updated vehicle, a newer vehicle that didn't have a chance to break down. Now, there's testimony Mr. Osborne says, well, I think that Suburban may have needed some brakes or had to fix the brakes, or I didn't think it was safe. Later on he says, no, I had the brakes fixed. She says that, you know, the air conditioning wasn't working in the back, and maybe it needed some other repairs. She wasn't sure what. Okay, none of that makes any difference. Okay, the reason why it doesn't make a trial. The reason he entered his order as he did was because the rear arrow didn't work. Yeah, he said it was damaged. Damaged, okay. Yeah, that's what the trial court said. Okay, the reason why these sort of statements about, well, maybe it needs brakes, maybe it needs other repairs. The reason why they don't make any difference is because she's using the car. I mean, she's using the vehicle as she always used. It was not even scheduled for repairs. It was not, they weren't seeking repairs. She wasn't planning on bringing it into a repair shop at all. She's just using the vehicle. Well, there's nothing in it about seeking repairs. You can have a broken down vehicle and say, well, I'll just rent a car. You know, I'll go to, when I go to the airport. Right, that's a matter of convenience. Yeah. Absolutely. That's a different coverage. I thought you were going to ask me about it. For example, if they went to the airport and they're going to fly to Florida, they're not going to use that car. They're going to go and rent a car from Hertz down in Orlando. That is a non-owned car. If it's broken down and they do have insurance. They would have, there would be coverage under the non-owned car coverage when you rent a car from Hertz or something. So you would have coverage under that particular situation, at least, if you lease it from a, because, you know, they always ask you, well, do you want to buy insurance for this car when you rent it from Hertz or Avis or whatever. Mr. Osborne did, by the way, and they paid. But the point is a lot of times people say no because it's a bad deal or it's expensive, whatever. So your own liability coverage would cover the leased car under the non-owned car coverage of the policy. Okay, I don't want to digress too far from my argument, but to try to get at what your question may be. But the point I'm trying to make is the temporary substitute coverage here at issue in the case, it's not triggered by concern or fear of maintenance, concern or fear of a breakdown. Fear of a breakdown is not a breakdown, okay, and that was decided in this economy versus Dean Colon. There's only two cases that have really decided this issue and they're both cited by the trial court. But, again, I think the analysis was incorrect. That economy versus Dean Colon and standard versus century, one of them said there was the temporary coverage, one of them said there was not. And I'll get to the cases in a second here. What I'm trying to say, Judge, is anytime someone has a car that has over 100,000 miles on it, well, yeah, it's going to need maintenance. I mean, it's just a matter of time. I mean, the clock is ticking, as we all know. It's going to need an alternator. It's going to need a fuel pump at some point. It's going to need a water pump at some point. Brake job, of course. Air conditioning is an exception, not an exception. That's a different. Yeah, I mean, maybe the air conditioning will need to be fixed. But what I'm trying to say is the air conditioning, what the trial court said about the air conditioning, that's not damage. That's required maintenance. Just driving the car. If the headlight goes out, it just burns out. If you're driving a car for 10 years, the headlight's going to burn out eventually. Now, is that damaging the car because you drove the car, because you had a car for 10 years, or is that maintenance? The court looked to a dictionary definition. What I'm trying to argue is. . . Is this the Supreme Court or the appellate court, you're saying? Well, no, I'm talking about the trial court. You used the dictionary definition. No, I'm talking about, in this case, the trial court. I understand that. But in the one you're citing, you said there's two cases. Oh, I'm sorry. I apologize. I'm getting ahead of myself. Those Illinois. . . These are Illinois appellate court cases. I think they're both. . . I'll tell you where. . . I'll give you the site. If you want the official site. . . Just see if it's in the first section. Yeah, 4th District is Economy v. Dean-Columb. That's 4th District. And the other one is Standard v. Century, and that's the 1st District. Okay. Okay, anyway. Okay. So there's always a concern in any higher mileage car that eventually the car is going to need some maintenance. Now, if it's brakes, well, can I get another 1,000 miles, 500 miles? I mean, are they really screeching bad? Is it a problem? If it's some of these other issues, well, how long can I go to keep it out of the shop? That's just part of owning a higher mileage car. Those concerns don't trigger this coverage because the car has to be out of use. If you're driving the car daily basis, not even scheduled for maintenance, not in the shop, the car is in use. It's not out of use. In other words, a fear of, well, we're going to drive this Suburban down to Florida, and, you know, that fuel pump might go out on us. That doesn't mean the car is out of use. That just means you're concerned that you may potentially have a breakdown. Maybe it will break down. Maybe it won't. Maybe the brakes will fail. Maybe they won't. Maybe the water pump will go out. Maybe it won't. Obviously, no one really knows. You can't predict the future. But just a concern, and I have cited the cases about that. And, again, the economy versus Dean Cullum talked about that. But the point is just the fear of a breakdown or a fear of required maintenance doesn't automatically trigger coverage and say, well, look, you know, I'd rather not drive it down there. Let's just use this other vehicle and drive it down. That doesn't transfer the coverage. That's not what the criteria is under the case law. And there's numerous other out-of-state cases I cited in my brief for that. Now, the two... Out of those two cases you cited, what were the three? I'll get to that right now. I know you're... I'm sorry, Judge. I'll address it immediately. Okay. Economy fire versus Dean Cullum. Okay. This is a case where the girl in Champaign wanted to drive down to Louisiana. She had a concern that the car was kind of having problems with maybe the fuel line. She thought it needed a tune-up that had about 80,000 or 90,000 miles on it. So she rented a car. The rental car was later involved in an accident. The court said that this rental car was not entitled to the temporary substitute coverage because there was no evidence that she was actually seeking repairs on the Ford Tempo that she had. She said, well, she had a concern that maybe it would need a repair, but a concern does not trigger the coverage, the temporary substitute coverage.  She didn't even make any effort to schedule it or to try to get it repaired. So there was no coverage there. Now, the case that there was coverage for temporary substitute, that's the standard versus century case. And this is a situation where this babysitter was going to care for a girl in school. The parents had left town, and they had a vehicle in their garage. The babysitter noticed that her vehicle, the steering was malfunctioning, was pulling one direction, and she had concern. Actually, I think she thought it was the brakes. Anyway, she had trouble controlling the vehicle. So she attempted to schedule the vehicle for servicing, and she couldn't get it serviced that day. So she stopped using it. She stopped using her vehicle and used the parents' vehicle. I think it was a Cadillac anyway. And then she got into an accident with the parents' vehicle of the girl that she was supposed to look after anyway. So the court said, well, she took her vehicle out of use. It was withdrawn from normal use. She was not going to drive her vehicle anymore. She tried to schedule repairs, and she wasn't going to drive her Ford Tempo because of this concern of the steering or the braking. So for that reason, the court found it was withdrawn from normal use, and so she used that other vehicle, the parents' vehicle. And so coverage was extended in that situation. Our case is very clear. There was no attempt, there was no need, there was no testimony whatsoever that this 2004 Chevy Suburban was withdrawn from normal use, was withdrawn from use at all. It was used consistently throughout the time of this accident. Mrs. Osborne used it as she always had, didn't schedule it for repairs, didn't have any problems using it, didn't have any concerns about it, and there was absolutely no effort to stop using it at any point before the accident occurred. It was absolutely unequivocally in use. To say, well, you know, it's not really safe to go X number of miles, we're concerned about it breaking down when it gets out of state, that's not the criteria. The policy doesn't provide that. It's temporary coverage in case of concern for driving or concern for the range of the vehicle or concern for the distance that you drive the vehicle. That's not what the policy provides and that's not what the cases say. The cases say it's not a matter of convenience that triggers the coverage. The cases say and the policy says the car has to be out of use, number one, due to a breakdown in repair, servicing, damage, or theft. That's what the policy says. That's what the cases say. And we just don't have that in this instance, in this situation, Your Honor. Again, getting back to this damage thing. Okay. Yeah, I'll get to you. Afternoon. May it please the Court. My name is James Rupert, Haskins & Haskins P.C., Mount Vernon, Illinois. I represent the defendants in this case, Ms. Kimberly Inglesby et al. You heard all about out of use, out of use, out of use, and I want to talk about these two cases that are Illinois cases. The good thing about this court is usually you guys talk about some stuff that will guide us in how to handle our cases before us every day, and that happened in the case of this Fourth District case, Economy Fire. Economy Fire, as counsel alluded to, was a case where a girl, her name was Dean Colombo, she had a Chevy Vega. I'll take you down memory lane here with some of these cars. But she rented a Buick to replace this Vega. And what she did was she took the Vega and she parked it in her driveway. She drove it the day before. She drove it all around town. There was no real issue with it. She talked about besides what she thought was maybe possibly couldn't break down. We agree with that. But what ends up happening, Your Honor, is she rents this Buick. She drives down to Louisiana and her knucklehead brother, of course, gets in a wreck whenever he's down there driving around this Buick. And ends up the court, as part of the analysis, reviewed this whole out of use issue. And in that case, actually the term was normal use, which is very similar, and I don't think it really makes a difference. But what the court looked at was they said is normal use, does that constitute and include out-of-town trips? Okay. And they said if it constitutes these out-of-town trips, then if the vehicle is out of use for out-of-town trips alone, that would be sufficient to allow there to be coverage. And it's a very, almost extremely akin to the case at hand. We have a family who rented a vehicle that was concerned about these out-of-town trips, and their whole point was that the vehicle was out of use for these out-of-town travel. Did they drive it around the day before? Absolutely. And what's kind of interesting, if you look at the standard mutual case, which is the first issue of the case, if you look at that case, Your Honor, the gal that got in the wreck in that case, she withdrew her vehicle from use, but she was driving it out of use before. And she actually only took it out of use because she was concerned about a braking issue. It wasn't as if she couldn't operate the vehicle around town. She had until she actually just parked it in the driveway and took the couple's house that she was now sitting in, took their Cadillac out and drove it around. So if you look at that case, and it took me the second or third time to actually read it, but they talk about it. They say if this vehicle is out of use for out-of-town trips, then we need to consider now whether it's actually broken down or whether it's in a repair. And so that's why they move past the out-of-town issue or out-of-trip issue, out-of-town trip issue onto these other terms in the policy, which were in that case breakdown or repair. There's a lot of sites to other precedents and other courts, but that economy fire case is wholly precedential in its binding authority. Now, moving on to this damage issue, it's interesting. All these cases that we had in Illinois, the two cases that were cited by counsel, was the economy fire and standard mutual case. Neither of those cases, the policies had this term damage. This is, I think, a matter of first impression, frankly, for the court. What does this damage term mean in these temporary placement vehicles cases? So there's no precedent in Illinois. And so the court did what it did. Whenever the term damage is not defined, it gave its plain and ordinary meaning. And ultimately, this damage term is extremely broad. And not only that, in these cases where the term is not defined, the court is required to give the level of construction. And ultimately, what the trial court heights had on, so to speak, was that this vehicle that was being replaced was damaged because the A.C. was not working. They were going on a whatever, takes to drive and sell it on the way to Florida trip. And the judge took judicial notice that it was 80s, 90 degrees, and that it may be dangerous, possibly even criminal, to have these kids in this vehicle. But ultimately, he determined the vehicle is damaged because the A.C. was out. All right. There's other issues, though. The court's allowed to draw reasonable inferences. The testimony from Mr. Osborne, the owner of the vehicle, was that the vehicle that was being replaced, the Suburban, was barely running. It was drivable only short distances. And so I think the inference is there's something going on that makes them very concerned to drive this vehicle for any type of long distance. And it's obviously damage. I don't think there's anything else besides damage that could be attributable to why this car was not in a state of well-operating condition. Those two issues the judge and the trial court found in our favor. There was two other terms that we were arguing that would allow coverage to afford to our clients, and that was the breakdown term and the repair term. And if you, again, look at these cases, that being economy, fire, and standard mutual, both of those cases had the term breakdown in the policies when they were considering whether there was coverage or not. And what the overall, if you read both cases together and one cites the other extensively, what the overall concern of those cases were is there a safety issue and did it need repairs and has it taken any action to get repairs. And if you read the transcripts of these two depositions, that being Mrs. and Mr. Osborne, that is the repeated overarching reason that they rented this vehicle in the first place was safety. They didn't want to make a trip to Florida with an unsafe vehicle. And so I think that weighs in favor of us, and that was specifically why the court, one of the specific reasons why the court in economy and fire did not find in favor of coverage was because the safety issue wasn't presented. And I won't bore you with the repair aspect of it because it's very akin to the breakdown. But I think it's important to also note that if you look at economy and fire, economy and fire, they go on to cite some other cases from sister states as well about instances where coverage has been afforded to insurers with these temporary replacement vehicles. And they talked about instances with bad tires being sufficient to allow coverage with a flat tire that took the car out. These are out-of-state cases. These are out-of-state cases, but they were cited to them in the economy and fire case. Did you cite it? We did, yes. And they're cited, obviously, in the decision of the economy and fire case. One of the other issues that I think you're going to see a lot in the briefs written by the appellant is this issue about one premium, one vehicle, essentially. You can't have two operating vehicles for one premium. You have to look at this temporary replacement vehicle provision in the context of all the other conditions that must exist. And there's a case in Illinois, as we cite in our brief, called Nationwide. And the other conditions are that this vehicle is being replaced, but you only replace it for a short period of time. You can't do this on a long-term basis. You have to have a vehicle that's not owned or not registered to you, at least under the provisions of this policy. And there's a couple other ones that, again, I want you guys to see this later. But ultimately, the theory I think that's being advanced by the appellants here is that somehow we can magically operate two vehicles and pay one premium and do that indefinitely. And that's just not the case here. I mean, I guess you could find a different person every few days to borrow their vehicle and loan it out and have your vehicle not, but I just don't think that's practical. And the whole rationale behind this one premium, one vehicle is the courts have said, well, we want to make sure that they're not assuming too much risk, more risk than what they expected to assume. And I think by the fact of there only being two cases in Illinois, that this is a small risk. There is also no evidence that they did not assume this risk when they wrote these terms. There's been nothing advanced saying this is our analysis of the risk. I think the policy speaks for itself and that the coverage is afforded if the terms are met and that's the risk they assumed. And I think this scenario is one that fits squarely into it. I mean, just think about the fact of what is a rental vehicle. It is a temporary replacement vehicle in all aspects. That's why we rent vehicles. You leave your car at home. You take the temp rental out for a drive. Again, Your Honor, the last thing I'll just say is that if you look at all these terms, out of use, and there's four terms that are related to here, out of use, breakdown, repair, damage, all of them have to be construed liberally. They're not defined in the policy. I believe if you give them even a non-level construction, the facts of this case squarely fits within them and that would afford coverage to our clients. Thank you. Do you guys have any questions? No questions. Thank you. Thank you. You're welcome. I know this is going to get square. I don't mind here, but what if you have two cars, one's broken down? You would insure two cars. Yeah. One's broken down and it's in the shop. Right. So I can rent a car. I can't rent a car. You can rent a car and you can buy the extra premium. Is it covered? It's covered by the non- Am I covered is what I mean. Non-owned car coverage. If you decline their liability coverage that they want to sell you at Hertz. Well, I've got a car in the shop. Right. Oh, if the car's in the shop, for you I am. My other car runs great. Okay. If the car is in the shop, if it's debt policy will allow you I am coverage for your passengers. If somebody runs to you, they're underinsured by the car that you rented from Hertz. Because the car that you had that's in the shop, it's out of use because it's undergoing repairs. Right. Because it's out of use and it's not drivable, then that transfers over to the temporary substitute vehicle. So I'm in good shape then? Yeah, because you can't drive two cars at the same time. Right, but you can't drive two cars at the same time. I know that. So the point is the car, the coverage that you have for the car in the shop, that would transfer because it's not in use. Right. Because it's in repair, that transfers to the rental car. So in this instance, the passengers would have the UIM coverage because it's a temporary substitute car. So it would be always a good idea to have a car in the shop if you travel a lot. I'm not sure what... Well, what I'm saying is if I travel a lot... Well, if you travel a lot, it's probably a good idea to get extra coverage. If you're going to be using a lot of rental vehicles, it's always a good idea to get extra coverage because then your policy would be access to the other... You don't have to pay for extra coverage if you've got coverage in the car that's in the shop. That's what I'm trying to say. Is it a good idea to have a car in the shop if you travel a lot? And you're saying yes. Right? Well, are you talking liability? Yes. Uninsured? I'm not sure. I'm talking liability. Liability? Mm-hmm. Well, if you want extra liability coverage, if you want to get extra liability coverage, it would transfer over the liability coverage. It would be independent of whether it's in the shop. If you rent a car from Hertz, that's a non-owned car under the State Farm policy. Right. So you would have to... The car in the shop, which is a State Farm car, is the insurance I have. Right? The car in the shop is State Farm as well? Right. Well, most people have more than one car now. That's what I'm trying to say. If you have a good car and a bad car, you're still not covered. Is that what you're saying? No, you're covered. If the car is not in use, you're covered. Okay. Because it's in the shop. Right. It's undergoing repairs. So that's what I'm saying. It's always good to have one in the shop. That's what I'm saying if I'm an insurer. And you're saying, yeah, you're right. Well, if the UIM coverage is going to be an issue, I suppose it's probably true. Okay. If it's out of use, then the coverage will transfer. Right. But I think the more fundamental question is, going with what the trial court did in this particular instance, is the idea of damage. This idea of car being damaged, well, first of all, it's not even out of use to begin with. And damage, I mean, like I said before, a car can, a high mileage car, components eventually fail on it. Now, is that damage or is it maintenance or is it just use? I mean, I understand this liberal construction if the term is ambiguous. But just because a term is not defined in the policy doesn't automatically make it ambiguous. The trial court used the dictionary definition of damage, physical harm that impairs the value or usefulness of something. Well, again, I mean, the court shouldn't have to torture policy. It's not appropriate to torture a policy to try to find coverage. Just because something wears out over time, that's a maintenance issue. It's not damage. No one took a hammer and smashed the air conditioner in this vehicle. But you argued both sides of the street. You argued if your water pump goes out because of high mileage. Didn't you? Yeah, but I've never said that was damage. That's just maintenance. Well, I don't mean to apply any of that as damage because you're just using a vehicle. Just usual use of a vehicle, driving a vehicle. When you drive a vehicle down the street, you're not damaging the vehicle. You're just using the vehicle. It's wearing. Things are wearing. Right? At a certain point, you say the rental car will come. That's when you put it in the shop. That's what you're saying, right? But you're using the vehicle when you're driving it. And the policy only, the temporary auto, the temporary coverage here only applies if it's not in use. If you're using it, it doesn't apply because your car is covered when you use it. I'm sorry. Go ahead. Okay. Well, yeah. The other thing I wanted to mention on this economy, I guess we have a difference of opinion on reading the case. I just suggest that the court maybe review this economy versus Dean Coloma. I invite the court to do that. I mean, it's said in here that we have a concern over it, but we also have an automobile normally used within the community. There's no evidence of impairment. The court basically found that any other ruling would render the policy limitation meaningless, and insured could always have a suspected problem with the insured vehicle, thus extending coverage to other vehicles the insured might drive. And they distinguished standard where there's no evidence, no attempt to obtain repairs, which was significant in the other case because the girl stopped driving the car. She tried to get it repaired, stopped driving, and took it out of use. I just ask this court to reverse the trial court and enter a summary judgment for State Farm and against the defense. Thank you. And we'll have a short break for our panel.